**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| vs. | ) | **REPLY** |
| | ) | |
| | ) | |
| | ) | **Docket No. 3:06cr85** |
| **THOMAS McKOY RICHARDSON,** | ) | |
| **Defendant.** | ) | |

_____

NOW COMES the Defendant, by and through the undersigned counsel, and submits the following Reply to the Government's Response to Defendant's Motion to Suppress.

I. <u>The Warrant Lacked Probable Cause and Can Not be Rescued by Leon</u>

(1) There was ample probable cause contained in the Affidavit to issue an arrest warrant against Mr. Richardson. He had sent CP in an email at some point in the past. That, however, is not the issue here. In support of searching *Mr. Richardson's residence* for evidence of that crime, the court issuing this warrant was provided only an ancient, conclusory, boilerplate opinion: Those involved in CP often keep such images on a computer at home.

(2) Distilled to its essence, the Government is arguing that child pornography cases are exceptions to the rule that probable cause to arrest does *not* establish probable cause to search a place. This is the critical "nexus" requirement. If the "profile" fact that users of CP keep the images indefinitely is accepted, then there is no case in which a search warrant for the suspect's home should be denied. This essentially leads to general warrants and deserves the highest scrutiny.

(3) The Government cites <u>Anderson</u> for the proposition that the nexus may be established by "the nature of the evidence and the normal inferences" which can be drawn from it. Surely those inferences must be logically consistent with the other facts offered in the Affidavit. What is made plain by the other "profile" information offered in this search warrant application is that computers have greatly increased the anonymity for those committing this crime and that there has been a proliferation in volume of CP available to anyone with the motivation and knowhow to run a Google search.

(4) If, as claimed in the Application, CP users have historically hoarded their images because they were difficult and dangerous to acquire, then the modern internet environment described in that same Application has diminished the need to hoard. In fact, the greatest risk in these days of aggressive internet enforcement is found in *keeping the images*. Based on that "profile," it is entirely logical that offenders are finding their CP with relative ease and safety and destroying all record of it on their computer after each session. Where the reviewing magistrate is directed to consider the totality of the affidavit in deciding whether probable cause exists, this inconsistency is inescapable.

(5) Counsel for the Defendant would concede that an examination of the case law on search warrants in CP cases will yield a treasure trove of citations for the Government. Conversely, the landscape of cases in which an illegal search was barred is a veritable wasteland. Courts are understandably reticent to suppress evidence necessary to secure convictions of sex offenders. The jurisprudence over the past 20 years in this area has nearly eroded the protections of the home to a nullity. Fourth Amendment litigation has devolved to a search for probable cause under an almost impenetrable deference to the magistrate, redeemed (if necessary) by the conclusion that all mistakes by law enforcement with the exception of malicious

misrepresentations are harmless. The case law still contains restatements of the foundational principles of the Fourth Amendment, but virtually no searches are suppressed on their facts. There are, however, glimmers of light.

(6) Ironically, the Government itself has cited a case in which the Fourth Circuit has drawn the cautionary line. The court upheld the contested search but concluded its opinion with the following warning:

> We wish, nevertheless, to emphasize that sloppily prepared or executed search warrants directly affront the Fourth Amendment to the United States Constitution. While *Leon* was present here to rescue a possible defective warrant, judicial officers and policemen should exercise care to see that their warrants and supporting affidavits are correct *for the saving effect of Leon or other rescue operations will by no means be necessarily sufficient in another case*.

United States v. Anderson, 851 F. 2d 727, 730 note 1 (4th Cir. 1988)(emphasis added). If this statement means anything, it is that inexcusable faults in search warrant applications will not be tolerated forever. The court was attempting to exert corrective pressure on law enforcement through its published opinion and must have intended that those agencies take heed.

(7) The Anderson court was referring to the officer's failure to set forth in the affidavit the relevant time at which the crime was committed or the suspect had possession of the evidence. This very "staleness" issue exists in the present case. Though the Government has been able to synthesize a time frame of three months in its Response, no reasonable magistrate would have done the same.

(8) Under Leon, the use of suppression was limited to cases in which there would be a deterrent effect. When a mistake made by law enforcement is "rescued" by Leon and is then allowed to repeat itself in another case by reference to the prior case law, there is no reason for law enforcement to ever comply. Each new invocation of Leon as to that "mistake"

institutionalizes the Constitutional flaw. If the mistakes stopped, pronouncements such as the one in <u>Anderson</u> would be unnecessary. Law enforcement must be charged with knowledge of the pronouncements of the courts. There must come a point where the courts refuse to excuse as "good faith," mistakes which have been repeatedly repudiated at law.

(9) This warrant application should have attended to the longstanding nexus requirement in some way beyond a logically inconsistent, boilerplate sentence. This application should have made some effort to affirmatively inform the reviewing judge how long it had been since they had information that Mr. Richardson had committed a crime. These were mistakes that courts have been trying to correct for years and the lessons went unheeded. The warrant was predictably invalid and it should not be excused as good faith.

II. <u>AOL Acting as an Agent of the Government</u>

(10) The Defendant contends that an evidentiary hearing is necessary to explore the question of AOL's status as a Government agent in the context of this search. The Government is alleging in its Response for the first time that AOL's search was done pursuant to its Image Detection and Filtering Program ("IDFP"). AOL had previously asserted to Counsel that it did not conduct searches without a specific request by another party to do so.

(11) Mr. LoGalbo's Affidavit notwithstanding, that issue remains a substantial question of fact. His statement that "to the best of my knowledge and belief, there has been no request by any law enforcement agency," does not attest to a substantive fact. The statement "to the best of my knowledge" is not the equivalent of "upon information." He does not aver that he conducted any investigation into the issue before drafting his Affidavit. Given that it was only in the paragraph addressing this issue that he used the phrase, it would appear that he has some lower

quantum of actual knowledge as to this fact than as to the other information he provided (about the IDFP).

(12) As to the test for agency under Ellyson, neither prong seems resolved. The Government seems to suggest that unless a specific law enforcement agency knew of and acquiesced in this particular search, there would be no bar. Clearly, if a law enforcement agency had knowledge of and acquiesced in an ongoing program within a private corporation to search for evidence of criminal activity, the first prong would be satisfied as to any one of those searches.

(13) Given the deep connections between AOL and law enforcement (see Defendant's Motion to Suppress), it is clear that a substantial purpose in searching for these images was to have the offenders prosecuted. ("[I]f AOL discovers [through its IDFP search] that someone is trying to send a file over our network with a signature from that library, AOL prohibits transmission of that file and refers that image to NCMEC to be investigated and prosecuted." Testimony of John Ryan, Chief Counsel of Compliance and Investigations, AOL, before Committee on Commerce and Energy, United States House of Representatives, June 27, 2006.) The question of whether this motive was sufficient to satisfy the second prong of Ellyson is one which will require a factual determination by the Court.

(14) The Government also contends that in searching for only for data files which contain matching "hash values" to known images of CP, AOL was not searching content. The hash value is identifying content itself. Defendant would argue that the situation is analogous to scanning the exterior of a house with infrared technology. Though there is no physical entry or penetration of the dwelling, the scan reveals the nature of objects and people within and is thus a search under the Fourth Amendment. See Kyllo v. United States 533 U.S. 27 (2001). Scanning

an email attachment to reveal the nature of its content is no different than scanning a house to reveal its contents.

(15) While Defendant acknowledges that he has the burden to prove that AOL was acting as an agent, he has provided a great deal more than "mere speculation" of the relationship between the Government and that company. Given that AOL has now given contradictory explanations as to how the search came about, a hearing at which the Defendant could present testimonial and/or documentary evidence will be necessary to meet his burden.

WHEREFORE, Defendant repeats his requests that the Court grant his Motion to Suppress, or in the alternative, set this matter for hearing and oral argument on the issues raised above.

Respectfully submitted, this the 17th day of August, 2007.

_____
s/ANTHONY G. SCHEER
NC Bar # 19257
Attorney for the Defendant
Rawls, Dickinson & Scheer
1011 East Morehead Street, Suite 300
Charlotte, North Carolina 28204
704-376-3200 (office)
704-332-2716 (fax)
tscheer@rdslaw.com

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he has, this day, served a copy of the attached Motion on the parties listed below by ECF Notification system at the email address listed below.

       Kimlani Murray Ford
       Assistant United States Attorney
       227 West Trade Street, Suite 1700
       Charlotte, North Carolina 28202
       kimlani.murray@usdoj.gov

This the 17th day of August, 2007.

 

_____
s/ANTHONY G. SCHEER
NC Bar # 19257
Attorney for the Defendant
Rawls, Dickinson & Scheer
1011 East Morehead Street, Suite 300
Charlotte, North Carolina 28204
704-376-3200 (office)
704-332-2716 (fax)
tscheer@rdslaw.com