# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:06-CR-85-MR-DCK-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| THOMAS MCKOY RICHARDSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion To Suppress" (Document No. 25) filed July 24, 2007; "Government's Response To Defendant's Motion To Suppress" (Document No. 26) filed August 3, 2007; and Defendant's "Reply" (Document No. 29) filed August 17, 2007. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b) for a recommendation on the disposition of this motion.

Having carefully considered the papers, the record, the applicable authority, and the arguments of the parties at a hearing on January 7, 2008, the undersigned will respectfully recommend that the motion to suppress be <u>denied</u>.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 10, 2004, the National Center for Missing and Exploited Children ("NCMEC") received a complaint through its Cyber Tipline from America Online, Inc. ("AOL") relating to the transmission of an email containing an allegedly illegal child pornographic image ("CP").[1] The email sender was identified as "knifeisland@aol.com." NCMEC subsequently contacted an

---

[1] The facts are presented here as described in the "Affidavit In Support Of Search Warant" and do not seem to be in dispute.

unknown law enforcement agency and reported the alleged criminal activity.

On July 6, 2004, the North Carolina State Bureau of Investigation ("SBI") submitted an administrative subpoena to AOL to obtain subscriber information related to "knifeisland@aol.com." In response, on August 2, 2004, AOL identified the "knifeisland" account as one established in January 2001 by Thomas M. Richardson of 2541 Pine View Lane, Gastonia, North Carolina. The subscriber information also indicated that the screen name "tr2066" was associated with the same account. AOL terminated the account on June 10, 2004.

On August 16, 2004, the information provided by NCMEC was forwarded to SBI Special Agent Lori Shank for investigation. Special Agent Shank viewed the image from the email and described it as an "[a]dult white male engaged in genital to genital intercourse with a prepubescent female (approximately four to six years old)." An inquiry with the United States Postal Service revealed that Richardson no longer received mail at the Pine View Lane address in Gastonia, North Carolina and that no forwarding address was available.

On September 2, 2005, NCMEC received another report from AOL regarding the transmission of two (2) emails with embedded or attached files depicting child pornography. Both emails had attachments containing the same CP image. On November 3, 2005, SBI Special Agent John White viewed the image from the emails and described it as "[a] prepubescent white female performing oral sex on an adult white male." The emails had been uploaded by a user named "tr1029@aol.com."

On September 20, 2005, the SBI issued an administrative subpoena to AOL for records related to tr1029@aol.com. AOL responded with information indicating that the account was established on July 22, 2005 and that it was associated with the name Thomas Richardson and with

an address of 8508 Park Road, Charlotte, North Carolina. AOL terminated the account on September 2, 2005.

On September 30, 2005, SBI agents conducted an Accurint search for Thomas McCoy Richardson, Jr. and determined that his then current address was 7805 Andover Woods Drive, Apt. 604, Charlotte, North Carolina. That search also revealed that Richardson had previously received mail at both of the aforementioned addresses – Pine View Lane in Gastonia and Park Road in Charlotte (a UPS Store).

Also on September 30, 2005, the SBI ran a search of Thomas McCoy Richardson's criminal history. That search revealed that he had been arrested in Florence, South Carolina on October 17, 1995 for Indecent Exposure and was convicted on March 12, 1996. It was further revealed that he was arrested December 4, 1995 for the offense of Lewd Act Upon a Child Under 14. The act involved Richardson grabbing the buttocks of a twelve year old girl in a Florence, South Carolina Wal-Mart. Richardson was subsequently convicted of Assault/Battery of a High and Aggravated Nature on March 12, 1996, and as a result, he was placed on probation and required to register as a sex offender in South Carolina.

On October 21, 2005, it was confirmed that in fact Thomas Richardson was receiving mail at 7805 Andover Woods Drive, Apt. 604, Charlotte, North Carolina. On November 3, 2005, Richardson renewed his North Carolina's drivers license and listed the Andover Woods Drive address as his home. That same day, the SBI confirmed that Richardson was the lessee of the Andover Woods Apartment. On November 15, 2005, the SBI received additional information concerning Richardson's criminal history – namely, that he had also been arrested on October 17, 1995 on a charge of Indecent Exposure.

On November 17, 2005, SBI Agent John White included the foregoing information in an affidavit submitted in support of an application for a search warrant for the Andover Woods Drive apartment. Agent White, pursuant to his training and experience, included a section in the affidavit entitled "Use of Computers with Child Pornography" that provided general information on the preferred means by which those involved in CP produce, acquire, distribute, sell and store the material. Mecklenburg County Senior Resident Superior Court Judge Robert P. Johnston granted Agent White's application and issued the search warrant for the Andover Woods apartment. Later on November 17, 2005, Agent White, along with Charlotte-Mecklenburg police officers and agents from United States Immigration and Customs Enforcement and the Postal Service, executed the warrant.

While the apartment was searched, Agent White and other officers went to Richardson's place of employment and requested that he return to his home to be interviewed. He complied and was questioned in his kitchen as the search was completed. The principal evidence seized in the search was a computer found in the bedroom. Richardson identified the computer and acknowledged he was the only person to use it. Apparently, a subsequent report by Agent White states that upon being confronted with allegations that he had sent CP over the Internet, Richardson confessed to illegal activity – viewing and receiving CP by visiting certain Internet websites and sending CP by email. Agent White's report also reflects that Richardson admitted being addicted to viewing CP over the Internet, but denied ever meeting or speaking by phone with anyone he met on the Internet under the age of 18.

On April 26, 2006, a "Bill of Indictment" (Document No. 1) and arrest warrant (Document No. 2) were issued for Thomas McCoy Richardson, Jr. ("Defendant") for violations of 18 U.S.C.

4

§ 2252(a)(2) and (b)(1). Defendant was arrested on May 2, 2006 and made an initial appearance in this Court on May 3, 2006. A "Superseding Bill of Indictment" (Document No. 21) was filed on October 24, 2006, charging Defendant with violations of 18 U.S.C. §§ 2252A(a)(1) and (b)(1) and 2256(8)(A).

Defendant's "Motion To Suppress" (Document No. 25) was filed July 24, 2007 and referred to the undersigned for a recommendation on November 26, 2007. A hearing on the motion to suppress was held on January 7, 2008.

## II. LEGAL ANALYSIS AND CONCLUSIONS

Defendant's motion to suppress makes three arguments for suppression of certain evidence acquired by the Government during the investigation of this case: (1) that there was not probable cause to support the search warrant because of a lack of nexus between the alleged crime and the Andover Woods Drive apartment; (2) the <u>United States v. Leon</u>, 468 U.S. 897 (1984), "good faith" exception is inapplicable; and (3) AOL acted as a government agent and violated the 4th Amendment by searching Defendant's email without a search warrant.

**A. Sufficiency of Probable Cause For Search Warrant**

Defendant concedes that "[t]he details of the investigation offered in the affidavit **clearly** establish probable cause to believe that the Defendant had committed crimes relating to CP." (Document No. 25 at 5) (emphasis added). However, Defendant contends the search warrant issued in this matter is defective because a sufficient nexus was not established between the crimes alleged and the Andover Woods Drive apartment. The undersigned cannot agree. Although the underlying warrant could have been strengthened with more specific information related to the Andover Woods Drive apartment, the undersigned is satisfied that the affidavit in support of the search warrant

5

established probable cause to search that location.

As described in the affidavit, and in the recitation of facts above, SBI agents traced the transmission of at least two emails with CP to the Defendant. Following NCMEC's receipt of its latest complaint on September 2, 2005, the SBI connected the dots by September 30, 2005, revealing the links between Defendant's email accounts, his current and past addresses, the current CP complaint, and the 2004 complaint of CP associated with Defendant. It is logical that law enforcement would search the Defendant's current address rather than past addresses or his place of employment. Regardless of exactly when and where the underlying crime was committed, it appears that law enforcement made diligent and reasonably expeditious efforts to locate the Defendant and the likely instrument of the alleged crime – his computer.

The facts stated in the affidavit support probable cause that Defendant would have a computer with evidence of CP at his current address. Probable cause exists when there is a "'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Williams, 974 F.3d 480, 481 (4th Cir. 1992) (quoting Gates, 462 U.S. at 238). The connection "between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988).

In this case, there was a fair probability that the computer used by defendant for transmission of and storage of CP would be found in his residence. In an Eighth Circuit child pornography production case, the court found that even though pornography was alleged to have been produced at the defendant's prior residence, the search warrant issued for defendant's new residence was valid because "it would be reasonable to infer that [defendant] would have [the child pornography] at his

new residence." United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007).

In addition to the specific facts of the case, the affidavit in support of the search warrant is bolstered by general "profile" information of child pornography purveyors supporting probable cause that the Defendant's current address would have child pornography, a computer and/or other potential sources or storage devices of child pornography. The Government contends, and offers substantial case law to support, that courts have held that a judge can properly rely on such collector or profile information when determining whether probable cause exists. See United States v. Gourde, 440 F.3d 1065, 1072 (9th Cir. 2005) (affidavit language regarding "use of computers by child pornographers and the collector profile strengthen" inferences that can be drawn from facts); see also United States v. Martin, 426 F.3d 68, 75 (2d Cir. 2005) (probable cause found where affidavit described the defendant's membership in child pornography web sites and where it contained profile and use of the computer language); United States v. Riccardi, 405 F.3d 852, 860-61 (10th Cir. 2005) (probable cause to seize computer where affidavit contained facts and detective's observation that "possessors of child pornography often obtain and retain images of child pornography on their computers"); United States v. Sassani, No. 97-4011, 1998 U.S. App. LEXIS 3731, at *9 (4th Cir. March 4, 1998) ("It is clear that the use of profiles, in conjunction with other evidence, to establish probable cause is allowable.")

Defendant, quoting United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993), contends that "[i]n determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." Defendant then notes that two of Defendant's email accounts were associated with user addresses at the Pine View Lane address

in Gastonia and at a UPS Store on Park Road in Charlotte and that these addresses were not searched. For the reasons stated above, this argument is not persuasive. The search warrant affidavit established probable cause.

### B. Applicability of *Leon* exception.

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court articulated a good faith exception allowing the admissibility of evidence obtained by a search warrant that is not supported by probable cause. The Court held that such evidence is still admissible if the search warrant was issued from a detached and neutral judge and the officers were not dishonest or reckless in preparing their affidavit and had a reasonable belief in the existence of probable cause. Leon, 468 U.S. at 926. Even *if* probable cause for the search warrant was not present in this case, and as stated above the undersigned believes there was, the Leon exception would apply here.

After careful review and consideration of the briefs, the affidavit in support of the search warrant, and the arguments of the parties at the hearing on January 7, 2008, the undersigned is convinced that the law enforcement officers investigating this matter were not reckless or dishonest and that they had reasonable belief that probable cause existed to search the Andover Woods Drive apartment. Furthermore, the warrant was issued by the senior resident superior court judge in this county and the officers' confidence in his detachment and neutrality, as well as his experience and judgment, was well-founded. The undersigned finds no cause to question Judge Johnston's approval of the search warrant and will recommend that the district judge find that the evidence obtained pursuant to the search warrant in this case should be admissible because the warrant was based on probable cause, and even if it were not, that the Leon good faith exception would apply.

### C. AOL's Role

Finally, the Defendant contends the evidence obtained in the search of the Andover Woods Drive apartment should be suppressed because AOL was acting as an agent of law enforcement when it searched Defendant's email account and discovered CP images. Defendant argues that AOL's search violated the Fourth Amendment and should not have been conducted without probable cause and a search warrant. This argument, while creative, is not supported by the facts or the law in this instance and must fail.

As the government contends, the Fourth Amendment protects individuals from unreasonable searches by law enforcement agents, but does not provide the same protection for searches by a private, non-governmental agency. See United States v. Jarrett, 338 F.3d 339, 344 (4th Cir. 2003). "The Fourth Amendment applies to a search conducted by a private citizen only if that individual is 'acting as an agent of the Government or with the participation or knowledge of any governmental official.'" United States v. Ellyson, 326 F.3d 522, 527 (4th Cir. 2003) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984).

The government argues that AOL was not acting as an agent for the government and that its discovery of CP associated with Defendant's email account was the result of routine scanning the company conducts to recognize files that may be detrimental to AOL, its property and its clients. See Declaration of John R. LoGalbo, Document No. 26-2. AOL has explained that its scanning (Image Detection and Filtering Program), which uses a hash set or hash value to identify known pornographic images based on their "fingerprint," was developed to prevent its network from being used to carry or store contraband (i.e. child pornography). AOL insists that this practice is for its business interests and is not conducted as an agent of the government. When AOL does identify CP, it is required by 42 U.S.C. § 13032 to report it to the NCMEC, as are all Internet service providers.

"The burden of proving that a private party acted as an agent or instrument of the government is on the defendant." Ellyson, 326 F.3d at 527. Defendant has not met that burden. Defendant presents a creative argument regarding what it contends are the close connections between law enforcement and AOL, including the employment by AOL of former federal and state law enforcement officials, AOL's participation in seminars and training conducted for various law enforcement agencies, and AOL's participation in certain policy-making organizations directed at combating illegal activity on the Internet, and concludes there must be an agency relationship. The undersigned is not persuaded that these relationships – or anything else cited by the Defendant – is sufficient to establish that AOL acted here as an agent or instrument of the government.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the "Motion To Suppress" (Document No. 25) be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum must be filed within ten (10) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel

for the parties and the Honorable Martin Reidinger.

**IT IS SO RECOMMENDED**.

Signed: January 16, 2008

David C. Keesler
United States Magistrate Judge